

Frank T. Cromwell, Cf. Atty., Norfolk District Office OPA, of Norfolk, Va., and Austin Fleming, Chief Counsel, OPA Rents and Services Division, and George Austin, Special Litigation Atty., OPA, both of Washington, D. C., for plaintiff.

Charles L. Kaufman and Wm. G. Maupin, both of Norfolk, Va., for defendant.

WAY, District Judge.

The case has been very interestingly presented and the Court will announce its conclusions.

The situation may be summed up as follows: The decision of the case turns upon whether the deposits in controversy are required by the lessor in a bona fide effort to protect him against losses which he may, and in numerous instances probably will, sustain as a result of the negligence or wilful acts of the tenant or those for whom the tenant is responsible, and to make it reasonably certain that the lessor will receive the amount of rent stipulated for in the lease undiminished, or whether the deposit is, in fact, intended to give the lessor benefits to which he is not properly entitled in addition to the money rental stipulated for in the lease, or, in other words, is indirectly increasing the rental.

BROWN, Price Adm'r, v. BAYVIEW MANOR HOMES, Inc.

Civil Action No. 279.

District Court, E. D. Virginia, Norfolk Division.

June 30, 1943.

The fact that the statute, Emergency Price Control Act of 1942, Public Law No. 421, 77th Congress, Second Session, c. 26, 50 U.S.C.A.Appendix § 901 et seq., and regulations are silent upon the question of whether or not the lessor may in good

faith require reasonable security against such losses is significant. If the Administrator had determined to prohibit the requiring of security for the performance of those obligations and against the wrongful acts or neglect of the tenant, the regulations would have so provided. The fact that they are silent on that subject indicates that it was not the intention of the Administrator to interfere with such reasonable provisions as have heretofore generally been incorporated in leases of residential property.

Applying that generalization to the specific facts which we have in this case, I am inclined to think that some of the provisions in the lease, if construed strictly, probably go beyond taking mere security against the default, negligence or wilful acts of the tenant and require him to do something that amounts to conferring additional benefits upon the lessor which the lessor would not ordinarily be entitled to; for example, make the tenant responsible for the lessor's negligence or permit the lessor to use the money deposited for his own personal benefit, rather than requiring it to be kept in a special fund for the specific purposes named. While an individual instance such as this may appear insignificant, when the practice is considered as a whole it is not insignificant. However, the practical construction which the testimony shows without conflict that defendant has placed upon those provisions in the lease negatives that idea. That is to say, I think that under the circumstances shown a lessor may require reasonable security in the form of a deposit against the wilful acts or negligence of a tenant, and to secure the performance of the covenant that at the end of the lease the lessee will surrender the property to the lessor in the condition in which he received it, ordinary wear and tear excepted, and that there has been no effort on the part of the lessor to go beyond those limits. Construing the lease as the lessor apparently has construed it, I do not think that any violation of the regulations has been shown. On the contrary, it has been shown that the object of the deposit was to obtain reasonable security against only the wilful acts, negli-

gence, or default of the tenant to the end that the lessor shall receive the rent stipulated for in the lease undiminished by any loss wrongfully or negligently occasioned by the lessee.

The necessity of requiring a reasonable deposit as security against losses of that character is obvious. As pointed out in the testimony and in the arguments, people of Norfolk and this section are not living in normal times, or under anything like normal conditions; we are not, in general, dealing with normal classes of persons or conducting the rental business in such a deliberate manner as to afford the owner of property the time to investigate persons desiring to lease his property and ascertain whether or not they will be desirable tenants. The situation under which we are living will not admit of such delay. The owners of the property must deal with transients—"in-migrants," I believe they are designated; that is, people who are here today and gone tomorrow. The great majority of the tenants are honest, hardworking, straightforward people, but unfortunately a substantial number of them are not, and feel no obligation to faithfully perform their part of the contract. Experience shows that some of the tenants are even in a worse category than that, and will not hesitate, upon leaving, intentionally to deface and damage the rented property.

If the lessor can not, in good faith, take reasonable steps to guard against losses of that character that may and in numerous instances probably will be inflicted upon him, then he will not receive the rent stipulated for, but a substantially smaller amount.

Under all the circumstances the Court concludes that the requirement is reasonable so long as it is employed for the specific purpose of obtaining security against the wilful acts, negligence, or carelessness of the tenant and against loss resulting from the violation of his covenant to leave the property in the condition in which he leased it, ordinary wear and tear excepted.

The restraining order and injunction order will be refused.