BOWLES, Administrator, Office of Price Administration, v. SYLBERN HOMES OF CONNECTICUT, Inc.

No. 1041.

District Court, D. Connecticut.

April 20, 1944.

Frederick H. Waterhouse, Chief Rent Atty. State Office of Price Administration, of Hartford, Conn., for plaintiff.

Joseph F. Berry, James W. Carpenter, and Day, Berry & Howard, all of Hartford, Conn., for defendant.

SMITH, District Judge.

The defendant constructed two groups of houses under priority ratings from the War Production Board. In addition to the amount set up as rentals by the defendant in its applications for priorities ratings, defendant has required its tenants to pay to it an additional amount equalling from two to three months' rent, either in a lump sum prior to occupancy, or in monthly payments until the agreed-upon sum is in possession of the defendant, the sum to be held by defendant as security against loss through damage to the premises by the tenant, or through other violation by the tenant of the terms of the lease.

The Price Administrator seeks to enjoin the practice of requiring security payments as being a violation of the maximum rent regulations. It is his contention that the security payment is rent within the meaning of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., and also within the meaning of the regulations issued thereunder; that, in this case, the requirement of security payments brings the total rent obtained by defendant from its tenants above the amount approved by the War Production Board as the monthly rent of each of the premises in granting priority rating to their construction, and, therefore, above the maximum rent permitted under Rent Regulation for Housing, Section 4(f).

It is the defendant's contention that, while the Administrator might have controlled the practice of requiring security payments, he had not done so, and they are not rent in the sense of a return for the use of the rented premises. The Administrator contends that the definition of the term "rent" in the Act itself, 50 U.S.C.A. Appendix, § 942(g),—"consideration

* * * demanded or received in connection with the use or occupancy of"—premises, is broad enough to include security payments since they are unquestionably a detriment to the tenant and a benefit to the landlord, and therefore "consideration" in connection with use or occupancy, even though they might not be considered, in the absence of the statutory definition, to be included within the usual meaning of the term "rent". He contends that they also fall within the definition used in the regulations, consideration "for" use or occupancy.

Had the practice of requiring security payments been specified in the applications to the War Production Board, we would have no difficulty in determining whether they were included within the rent approved for the premises by the War Production Board, which, under 4(f), became the maximum rent for these premises. However, they were not specifically so included. The question is whether they are properly a part of "rent" under the Regulation and, therefore, prohibited since not specifically allowed in the amounts approved by the War Production Board, which became the maximum rent.

Title I, Section 2(d) of the Act, Public 421, 77th Cong., 2d Sess., authorizes the Administrator to regulate or prohibit renting or leasing practices which, in his judgment, are equivalent to or are likely to result in price or rent increases inconsistent with the purposes of the Act.

From this it appears that the broadest control over defense area housing rents was placed in the hands of the Administrator. He might have regulated or controlled security deposits. But has he? He has not done so by regulation directed specifically at the practice. He has restated the definition of rent in the Regulation to consideration "for" rather than "in connection with" the use or occupancy of housing accommodations, a somewhat more restricted term which may or may not have been intended to narrow the field covered by the Regulation.

However, we are not concerned here with the question of whether a practice of requiring security payments with reference to a specific dwelling, a practice in existence on a base date, is properly part of the rent at that date to determine the propriety of its continuance in the future as part of the allowed maximum under other provisions of the Act than 4(f).

Must the amount approved by the War Production Board as "payment" or "rent" for priority housing to be constructed include in it any amounts to be deposited as security by the tenant, or be held to bar any such payments, as part of "consideration for use or occupancy" not included in the rent approved by the Board? It is difficult to read any such intention in the Regulation.

In view of the specific authority to control such practices against the possibility of their abuse, granted by Section 2(d), it is reasonable to conclude that the Administrator did not intend to control such practices by the adoption of a rental approved by another authority which, so far as appears, had given no opportunity to be heard on such practices to landlord or tenant, and, indeed, had made no determination as to their regulation and control.

Security deposits may be subject to abuse, although there is no proof that such is the case here. However, as pointed out in Brown v. Bayview Manor Homes, Inc., D.C.E.D. Va., 51 F.Supp. 557, there may be a need for security deposits to protect the owner of dwellings designed to rent to migratory workers. In any case, the desirability of the practice, with or without safeguards established by order of the Price Administrator to prevent its abuse as a means of evasion of the Act, is not before this court for decision. Indeed, it cannot be tested here. The question of its desirability and necessity should be threshed out, first before the Administrator, if he desires to prohibit or restrict the practice, and thereafter in the appellate tribunals provided under the Price Control Act. See, on review of decisions under the Act, Yakus v. United States, 64 S.Ct. 660, and Bowles v. Willingham, 64 S.Ct. 641.

I conclude that the practice of requiring security deposits, which exists in this case, is not a violation of the rent control act where the maximum rent under the Act is set at the rent approved by the War Production Board, and where no action has been taken to control or prohibit the practice on the part of the War Production Board in establishing its approved rental schedules, or on the part of the Administrator of the Office of Price Administration.

Judgment may be entered for the defendant.